## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RAYMOND JOSEPH ZBYLUT, | ) | CASE NO.  8:10CV60 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CITY OF OMAHA, OMAHA POLICE | ) | |
| DEPARTMENT, and CORY | ) | |
| CLEMENTS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' City of Omaha, Omaha Police Department ("OPD"), and Corey Clements's ("Clements") Motion for Summary Judgment. (Filing No. 15.)  As set forth below, Defendants' Motion is granted and this matter is dismissed with prejudice.

### I. BACKGROUND

Plaintiff Raymond Joseph Zbylut ("Zbylut" or "Plaintiff") filed his Complaint in this matter on February 11, 2010.  (Filing No. 1.)  Plaintiff filed an Amended Complaint on May 21, 2010.  (Filing No. 7.)  The Amended Complaint is the operative complaint in this matter and supersedes Zbylut's previous complaint.  Liberally construed, Zbylut's Amended Complaint generally alleges that (1) Defendants violated his rights under the Fourth Amendment and (2) the City of Omaha's official policies or customs caused a violation of his constitutional rights.  (Filing No. 7 at CM/ECF pp. 14-15.)

Defendants filed a Motion for Summary Judgment on December 20, 2010.  (Filing No. 15.)  In support of their Motion, they filed a Brief and Indexes of Evidence.  (Filing Nos. 16, 17, and 18.)  Zbylut did not respond to the Motion for Summary Judgment and the time in which to do so has now passed.

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Defendants submitted a statement of material facts in accordance with the court's Local Rules. Further, Defendants submitted evidence that was properly authenticated by affidavit or sworn deposition testimony. Zbylut did not respond to Defendants' submissions and, in particular, did not submit any evidence in opposition to Defendants' Motion. (*See* Docket Sheet.) In light of this, Defendants' Motion is deemed fully submitted and the court adopts the following relevant undisputed material facts, as set forth by Defendants.

## II. RELEVANT UNDISPUTED MATERIAL FACTS

1.      On January 22, 2008, Omaha Police Officers Clements and Tyler Stricker ("Stricker") were working on routine traffic patrol in a marked police cruiser.

2.      As they were driving southbound on 13th Street in Omaha, Nebraska, they came upon road construction, where the two-lane street narrowed to one lane (i.e., the right lane ended). Signs, barricades, and a directional arrow marked the lane closure.

3.      At this time, the officers observed a Chevy C3500 flatbed utility truck directly in front of their cruiser attempting to merge into the left lane of traffic as the right lane ended near Spring Lake Drive.  The driver of the truck was later identified as Zbylut.

4.      Due to the heavy traffic, there was no room for the utility truck to merge, but Zbylut attempted to force his way into the left lane nonetheless.

5.      As he observed Zbylut attempting to force his way into the left lane, Clements turned on the dashboard cruiser camera because he believed the utility truck was going to be involved in a collision.

6.      As a warning to Zbylut, Stricker deployed the air horn on the cruiser.

7.      Zbylut continued to force his way into the left lane, ultimately striking a minivan.

8.      Clements exited the cruiser and walked toward the driver's door of Zbylut's vehicle in order to make contact with Zbylut.  Meanwhile, Stricker made contact with the occupants of the minivan.

9.      As Clements approached the truck, Zbylut was sitting in his vehicle with his window rolled down, shouting and waving his fist at the driver of the minivan.

10.     Stricker and the passenger of the minivan could hear the driver of the truck yelling and arguing with Clements.

11.     After Clements approached the driver's door, Zbylut exited the vehicle and was shouting.  Consequently, Clements raised his voice over Zbylut's in order to give him verbal commands to calm down.

12.     Clements explained to Zbylut that he observed the entire accident and that Zbylut was at fault because he drove into the minivan without yielding and did not use his turn signal.

13.     Clements and Zbylut walked to the rear of Zbylut's vehicle while Zbylut argued with Clements about who was at fault.  At this time, Zbylut assumed "somewhat of a fighting stance."

14.     Clements advised Zbylut not to "square off" at him.

15.     Clements obtained Zbylut's driver's license and vehicle registration information and returned to his cruiser to check the information.  Meanwhile, Zbylut returned to his vehicle.

16.    At this time, Zbylut used his cellular phone to call 9-1-1 to request that a supervisor come to the scene.

17.    As a result, OPD Sergeant Jason Stracke ("Stracke") arrived at the scene and made contact with Zbylut, who was still sitting in his truck.

18.    Stracke advised Zbylut that he could file a grievance with Internal Affairs if he had a complaint about how he had been treated by the officers.

19.    Stricker cited Zbylut for careless driving.

20.    During the traffic stop on this date, Clements never touched Zbylut in any way other than possible incidental touches.

21.    A cruiser camera videotaped the entire traffic stop. Omaha police personnel and information technology staff did not have the capability to alter the video recording of the traffic stop.

22.    At some point between January 22, 2008, and June 27, 2008, Zbylut filed a complaint against Clements for using excessive force on him during the January 22, 2008, traffic stop, after which an internal investigation into Zbylut's claims was conducted.

23.    Zbylut was charged with false reporting based on his complaint that Clements used excessive force on him. The charge was later amended to obstructing the administration of justice, to which Zbylut pled guilty.

(Filing No. 17 at CM/ECF pp. 2-7.)

### III.  ANALYSIS

Zbylut's Amended Complaint generally alleges that (1) Defendants violated his rights

under the Fourth Amendment and (2) the City of Omaha's official policies or customs

caused a violation of his constitutional rights.[1]   (Filing No. 7 at CM/ECF pp. 14-15.)

---

[1]As set forth in the court's initial review of this matter (filing no. 6), the court construes a suit against the OPD as being a suit against the City of Omaha. Further, the court construes Zbylut's suit as being against Clements in his official capacity only, as Zbylut did not specify whether Clements was to be sued in his official or individual capacity. *See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999)* (holding that absent an express statement that defendant public servants are being sued in their individual capacity, § 1983 suits will be construed as being against defendants in their official capacity). A suit against Clements in his official capacity is merely a suit against his

Defendants argue that they are entitled to judgment as a matter of law.  (Filing no. 17 at CM/ECF p. 2.)  The court agrees.

**A.    Applicable Law**

**1.    Summary Judgment Standard**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).  It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate allegations with "'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).  "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.*  Essentially the test is "whether the  evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

---

public employer. *See id.* Thus, the court liberally construes claims against all Defendants as claims against the City of Omaha.

### 2.      Fourth Amendment Standard for Claim of Excessive Force

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law."

*West v. Atkins*, 487 U.S. 42, 48 (1988).  Here, Plaintiff alleges Defendants violated the Fourth Amendment's prohibition against the use of excessive force.   The Fourth Amendment's right to freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *see also Littrell v. Franklin*, 388 F.3d 578, 583-84 (8th Cir. 2004).  Such a claim is analyzed under the Fourth Amendment's reasonableness standard.  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006) (internal citations and quotations omitted).  "Reasonableness" must be:

> [J]udged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The Supreme Court has instructed, the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation. . . . Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct.  In addition to the circumstances surrounding the use of force, we may also consider the result of the force.

*Littrell*, 388 F.3d at 583-84 (internal citations and quotations omitted).

### 3.      Standard for Municipal Liability

As a municipal defendant, the City of Omaha may only be liable under section 1983 if its official "policy" or "custom" caused a violation of Zbylut's constitutional rights. *Doe By & Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By & Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir.1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental custom, a plaintiff must prove:

1)   The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)   Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)   That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe,* 901 F.2d at 646.

## B.    Discussion of Claims

In his Amended Complaint, Zbylut alleged that Clements used excessive force against him. Specifically, Zbylut alleged that Clements assaulted him by "slamming his upper body with intense and vigorous force" causing Zbylut physical pain. (Filing No. 7 at CM/ECF p. 14.) However, Zbylut's allegations are wholly unsupported by the record. The undisputed evidence shows that Clements did not use any force against Zbylut, much less

7

excessive force. In Clements's Affidavit, Clements states, "[a]t no time during my encounter with [Zbylut] did I use any type of force whatsoever on him." (Filing No. 16-1, Attach. 1, at CM/ECF p. 4.) Clements's sworn statement is supported by the Affidavits of Officer Stricker and Sandra Clemans (a third party who was a passenger in the minivan that Zbylut hit), who both stated that they were at the scene of the incident and they never observed Clements touch Zbylut in any way. (Filing No. 16-2, Attach. 2, at CM/ECF p. 2; Filing No. 16-4, Attach. 4, at CM/ECF p. 2.) In addition, the court has reviewed the video recording of the traffic stop (filing no. 18) and it supports Clements's, Stricker's, and Clemans's version of the events.[2] That is, it is apparent from the video recording of the incident that Clements did not use any physical force against Zbylut. In addition, it is undisputed that an internal investigation of this incident was conducted after Zbylut filed a complaint against Clements for using excessive force on him, and that investigation resulted in Zbylut being charged with false reporting. (Filing No. 16-5, Attach. 5.) In light of these undisputed facts, the court finds that Clements did not use excessive force against Zbylut.

Because Clements and the OPD did not violate Zbylut's constitutional rights, the City of Omaha is not liable for Clements's conduct. *See Monell*, 436 U.S. 658 (requiring proof of a policy or custom that deprived plaintiff of his constitutional rights); *City of Las Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the

---

[2]In Plaintiff's Amended Complaint, he alleges that OPD officials somehow edited the video recording in order to "cover up this incident." However, he has not substantiated this allegation in any way, and the undisputed evidence shows that OPD personnel do not have the capability to alter videos captured by the dashboard cruiser camera. (*See* Filing No. 16-6, Attach. 6, at CM/ECF pp. 1-2.)

hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") Accordingly, Defendants are entitled to summary judgment and the court will dismiss Zbylut's Complaint in its entirety.

IT IS THEREFORE ORDERED that:

1.     Defendants' Motion for Summary Judgment (Filing No. 15) is granted.  All claims against Defendants are dismissed with prejudice; and

2.     A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 10th day of May, 2011.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

_____

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.